FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2013 JUL 26 AM 11: 55

CLERK C. Adams
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

KATHERINE COYLE,                )
                                )
            Plaintiff,           )
                                )
      v.                        )     CV 312-067
                                )
CAROLYN W. COLVIN, Acting       )
Commissioner of Social Security )
Administration,[1]              )
                                )
            Defendant.           )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Katherine Coyle ("Plaintiff") appeals the decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

I.    **BACKGROUND**

Plaintiff applied for SSI on January 14, 2009, alleging a disability onset date of

---

[1]The Court takes judicial notice of the fact that on February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Accordingly, pursuant to Fed. R. Civ. P. 25(d)(1), the Clerk is **DIRECTED** to substitute Carolyn W. Colvin, Acting Commissioner of Social Security Administration, as Defendant in this case. Nevertheless, for ease of reference, the Court will hereinafter refer to the Acting Commissioner as "Commissioner."

November 9, 2005. Tr. ("R."), pp. 14, 118-20, 142. The Social Security Administration denied Plaintiff's applications initially, R. 80-83, and on reconsideration, R. 92-95. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a video hearing on March 16, 2011. R. 39-50. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel. See id. On June 13, 2011, the ALJ issued an unfavorable decision. R. 14-31.

Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since January 14, 2009, the application date (20 C.F.R. §§ 416.971 *et seq.*).

2. The claimant has the following severe impairments: bipolar disorder, an anxiety disorder, an antisocial personality disorder, hepatitis C, and degenerative disc disease of the lumbar spine. (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform medium work[2] as defined in 20 C.F.R. § 416.967(c) except occasional climbing of ladders, ropes, and scaffolds; and she must avoid concentrated exposure to hazards (machinery, heights). The claimant also has an inability to lift heavy objects with the right hand. Regarding her mental limitations, when not abusing substances, claimant would have the following limitation: unskilled work. The claimant is unable to perform any past relevant work. (20 C.F.R. § 416.965).

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national

---

[2]"Medium work" is defined as work that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c).

economy that the claimant can perform. (20 C.F.R. §§ 416.969 and 416.969(a)). Therefore, the claimant was not under a disability, as defined in the Social Security Act, from January 14, 2009, through June 13, 2011 (the date of the ALJ's decision).

R. 15-22.

When the Appeals Council denied Plaintiff's request for review on June 7, 2012, R. 1-3, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action in the United States District Court for the Southern District of Georgia requesting reversal or remand of that adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because the ALJ erred by (1) failing to address the medical opinion of Plaintiff's treating psychiatrist, a number of Plaintiff's Global Assessment of Functioning ("GAF") scores, and certain portions of a consultative psychological evaluation; (2) failing to find that Plaintiff suffers from a severe impairment relating to her right hand; and (3) failing to "develop a full and fair record" showing that there are specific jobs in the national economy that Plaintiff can perform, specifically due to the ALJ's allegedly improper use of the Medical Vocational Guidelines (the "Grids") and failure to employ the use of a Vocational Expert ("VE"). (See generally doc. no. 16 (hereinafter "Pl.'s Br.").) The Commissioner maintains that the decision to deny Plaintiff benefits was supported by substantial evidence and should be affirmed. (See doc. no. 17 (hereinafter "Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145

3

(11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal

4

conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. The ALJ's Disability Determination is Supported by Substantial Evidence

As noted above, Plaintiff's first argument is that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to address certain portions of the medical record. (Pl.'s Br., pp. 10-12.) From the outset, the Court finds that the ALJ's determinations concerning Plaintiff's functional limitations and RFC are supported by substantial evidence, as is abundantly clear from the ALJ's extremely detailed analysis of the medical records of Plaintiff's mental impairments. R. 19-29. In fact, the ALJ undertook a lengthy analysis of Plaintiff's mental impairments pursuant to the requisite four functional categories, the "paragraph B" criteria set forth in 20 C.F.R. § 416.920a, and rated her degree of functional limitation in each category with repeated reference to testimonial evidence. R. 17-19. This finding alone is a sufficient basis to affirm the ALJ's determination of Plaintiff's functional limitations. Even so, in the interest of fully addressing each of Plaintiff's arguments, the Court will proceed to address each "improperly" omitted opinion, evaluation, or finding in turn.

#### 1. Dr. Daryoosh Kalali's "Medical Source Statement"

Plaintiff asserts that the ALJ erred by "not even [mentioning] the findings of Dr. Daryoosh Kalali, the claimant's treating psychiatrist at Satilla Mental Health." (Id. at 10.)

5

Plaintiff describes Dr. Kalali as Plaintiff's "treating psychiatrist at Santilla Mental Health" (id. at 11), where she was treated from February 13, 2009, until June 23, 2010. R. 276-380, 414-40, 490-92, 543-45 556-83, 593-601, 604-766, 785-99. The Commissioner argues that Dr. Kalali was not, in fact, Plaintiff's treating psychiatrist, and that his opinion was accordingly not entitled to controlling weight. (Comm'r's Br., pp. 14-15.) Even so, the Commissioner argues, any oversight that the ALJ may have committed in not discussing that opinion amounts to no more than harmless error. (Id. at 15.)

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (*per curiam*). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004) (ruling that ALJ must accord substantial or considerable weight to opinion of treating physician unless "good cause" to the contrary is shown); Broughton v. Heckler, 776 F.2d 960, 961-62 (11th Cir. 1985) (*per curiam*) (same). The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical record. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir.

1991).

Here, although Plaintiff refers to Dr. Kalali as her "treating psychiatrist," the only evaluation of Plaintiff prepared by Dr. Kalali that appears in the medical record is a single "Medical Source Statement" dated February 8, 2010, wherein Dr. Kalali indicates that Plaintiff has "marked" and "extreme" limitations relating to various areas of mental functioning. R. 543-45. Notably, Plaintiff presents no substantive argument relating to the contents of that statement, but instead simply argues the ALJ's failure to address the same amounts to error. (Pl.'s Br., pp. 10-12.) As the Commissioner points out (Comm'r's Br., p. 14), although Dr. Kalali appears to have worked at Satilla Health Center, where Plaintiff was treated for approximately one year, his signature does not appear on any of the treatment notes from Satilla Health Center outside of that single Medical Source Statement – rather, the treatment notes from Satilla are signed by a number of other physicians, including, most regularly, Mubbashir Khan, M.D. See R. 283-85, 557-60, 568-71, 576-79, 664, 667, 713. Thus, the medical record does not indicate – and Plaintiff makes absolutely no effort to point to any other evidence indicating – that Dr. Kalali in fact acted in a "treating" capacity with Plaintiff. Moreover, Dr. Kalali's Medical Source Statement is merely a series of descriptions of mental abilities next to four boxes to be checked indicating a patient's aptitude for those abilities, and it makes no mention of any direct examination of Plaintiff having taken place. R. 543-45.

The Court thus concludes that Dr. Kalali was not acting as Plaintiff's "treating psychiatrist" in the sense described by the Social Security Regulations when he prepared his Medical Source Statement, but was rather acting as a one-time, consultative physician.

While it is true that, in the Eleventh Circuit, a treating physician's opinion must generally be given substantial weight, Hillsman, 804 F.2d at 1181, the opinion of a consultative physician is not entitled to great weight and may be discredited by other evidence in the record. Crawford, 363 F.3d at 1160-61. 20 C.F.R. § 404.1527(c) provides a list of factors that are considered in evaluating opinion evidence when the opinion is not that of a treating physician, or when a treating physician's opinion is not given controlling weight, including the length of the relationship, the frequency of examination, and the nature and extent of the treatment relationship. 20 C.F.R. § 404.1527(c)(2) specifically notes that, generally, more weight is given to opinions from treating sources as compared to reports of consultative examinations, since treating sources "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence . . . ."

Moreover, while the ALJ is required to "state specifically the weight accorded to each item of evidence and why he reached that decision," Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981), "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the Court] to conclude that the ALJ considered her medical condition as a whole.'" Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995)) (punctuation omitted); see also McCray v. Massanari, 175 F. Supp. 2d 1329, 1336 (M.D. Ala. 2001) ("[A]n ALJ is not required to discuss every piece of evidence submitted." (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998))). Here, the ALJ's failure to reference Dr. Kalali's Medical Source

8

Statement does not rise to the level of a "broad rejection" that is insufficient for the Court to conclude that he fully considered Plaintiff's medical condition as a whole. Dyer, 395 F.3d at 1211. Indeed, as noted above, the ALJ methodically analyzed Plaintiff's mental impairments pursuant to the paragraph B criteria and rated her degree of functional limitation in each category with repeated reference to testimonial evidence. R. 17-19.

Finally, Plaintiff does not provide any argument as to how she believes the ALJ's opinion might have differed had he directly addressed Dr. Kalali's Mental Source Statement. (See generally Pl.'s Br.) Because the mental limitations described in that statement are in direct contradiction to the wealth of testimonial evidence upon which the ALJ relied in evaluating Plaintiff's mental aptitude, there is no basis for finding that the statement would have affected the ALJ's decision in any way. Thus, even if the ALJ's failure to mention Dr. Kalali's Mental Source Statement were error – which it is not – it would be harmless. See Wright v. Barnhart, 153 F. App'x 678, 684 (11th Cir. 2005) (per curiam) (noting that "when an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand"); see also Crawford, 363 F.3d at 1160-61 (generally, the opinion of a one-time examiner is not entitled to great weight and may be discredited by other evidence in the record).

### 2. Plaintiff's GAF Scores

Plaintiff's argument that the ALJ erred by failing to discuss Plaintiff's GAF scores from Satilla Mental Health is similarly unavailing because the ALJ did address a series of more recent GAF scores that were assigned to Plaintiff during her treatment at Community Health Center. R. 24. Moreover, Plaintiff's GAF scores from Satilla Mental Health were

obtained during a period of time in which she repeatedly tested positively for drug use, and the ALJ clearly distinguished between Plaintiff's mental limitations when sober and when abusing substances. R. 19, 25-26, 414-40, 498-542. "There is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." Dyer, 395 F.3d at 1211. More importantly, regardless of which of the multitude of Plaintiff's GAF scores the ALJ did or did not address, a "GAF score does not itself necessarily reveal a particular type of limitation and is not an assessment of a claimant's ability to work." Ward v. Astrue, No. 3:00-CV-1137-J-HTS, 2008 WL 1994978, at *3 (M.D. Fla. May 8, 2008) (citation omitted) ("[A]n opinion concerning GAF, even if required to be accepted as valid, [does] not translate into a specific finding in regard to functional limitations."); see also Wind v. Barnhart, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (per curiam) (noting that "the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs'") (quoting Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746-01, 50764). Here, substantial evidence supports the ALJ's findings regarding Plaintiff's functional limitations and RFC, including his decision to omit any reference to Plaintiff's GAF scores from Satilla Mental Health.

### 3.  Dr. Marc Eaton's Evaluation

The Court also finds no merit in Plaintiff's argument that the ALJ erred by crediting only select portions of a psychological report prepared by Marc Eaton, Ph.D, who examined Plaintiff in a consultative capacity on June 29, 2009, R. 382-89. (Pl.'s Br., p. 11.) Specifically, Plaintiff appears to argue that the ALJ erred by failing to address Dr. Eaton's findings concerning Plaintiff's work-related mental limitations. (Id.)

10

Upon examination of Plaintiff, Dr. Eaton observed in his report that she was casually attired and well-groomed, appeared anxious, sweated profusely, and appeared to be under the influence of "a substance," although Plaintiff denied that such was the case. R. 384. Dr. Eaton opined that Plaintiff "appeared to be of below average intellect," but was "logical, coherent, and relevant at a concrete level." R. 385. Dr. Eaton also administered a series of mental aptitude tests, including a "Wecshler Adult Intelligence Scale - Fourth Edition" ("WAIS-IV") test, a Computerized Assessment of Response Bias ("CARB") test, and a Word Memory Test ("WMT"). R. 386-87. While Plaintiff performed poorly on those tests, Dr. Eaton determined that the totality of her test results were invalid because (1) the results were inconsistent with Plaintiff's performance on the Mini-Battery of Achievement Test measuring her aptitude for reading and mathematics, the quality of her verbal communication, and her reported educational background; (2) her scores were representative of an individual attempting simulate, exaggerate, or malinger cognitive deficits; and (3) her poor effort and malingering performance were likely motivated by the prospect of future litigation or other issues of primary or secondary gain. R. 385-87.

Having made clear that Plaintiff's test results concerning her supposed mental deficiencies were invalid, Dr. Eaton then went on to complete a chart entitled "Mental Assessment of Ability to Do Work-Related Activities," R. 387-89, which Plaintiff argues was improperly omitted from consideration in the ALJ's decision. (Pl.'s Br., p. 11.) The Commissioner asserts that, because the chart is based on Plaintiff's invalid test results and exaggerated symptoms, the ALJ need not have considered it. (Comm'r's Br., p. 12.) The Court is not persuaded that Dr. Eaton based the chart on the invalid test results – in fact, Dr.

Eaton specified that his reasons for awarding low marks to Plaintiff were her antisocial disorder, anxiety disorder, and anger management problems, R. 388, none of which were within the ambit of the invalid test results. While it is true that the ALJ did briefly mention Dr. Eaton's findings concerning Plaintiff's malingering and attempted simulation of cognitive deficits, he did so solely in reference to Plaintiff's credibility, and not in order to comment on Plaintiff's work-related mental limitations. R. 28.

As noted, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the Court] to conclude that the ALJ considered her medical condition as a whole.'" Dyer, 395 F.3d at 1211. That proposition is especially useful where, as here, the medical record is voluminous to an extent that the ALJ could not be expected to address every particular piece of evidence contained therein.

The Court is not aware of any authority establishing that the ALJ was required to address Dr. Eaton's consultative opinion concerning her work-related mental limitations, and the case that Plaintiff cites in support of that proposition, Tieniber v. Heckler, simply does not stand for it, as that case concerns a remand where the record as a whole did not support the ALJ's reasons for rejecting subjective proof of disability. 720 F.2d 1251, 1255 (11th Cir. 1983). That the ALJ here chose to refer to a portion of Dr. Eaton's evaluation in establishing Plaintiff's lack of credibility and declined to address the remainder of that evaluation does not in any way show that the ALJ failed to consider Plaintiff's medical condition as a whole, especially considering his lengthy analysis of her mental impairments in his decision, R. 17-19. Dyer, 395 F.3d at 1211. Moreover, similar to Dr. Kalili's opinion, even if the ALJ *had*

directly addressed Dr. Eaton's analysis of Plaintiff's work-related mental limitations, he also cited an abundance of evidence in direct contradiction of Dr. Eaton's findings that would have acted to discredit Dr. Eaton's one-time consultative opinion. Crawford, 363 F.3d at 1160-61. In sum, the ALJ's decision not to address certain portions of Dr. Eaton's psychological report was not error and also provides no basis for remand.

**B.      The ALJ's Findings Regarding Claimant's Severe Impairments Are Supported by Substantial Evidence**

Plaintiff next argues the ALJ erred by determining at step two of the sequential process that Plaintiff's "right hand difficulty" was not a "severe" impairment and by failing to consider its effect on her ability to perform the full range of medium work. (Pl.'s Br., p. 11.) The Commissioner argues that the ALJ's determination as to the non-severity of Plaintiff's right hand difficulties was supported by substantial evidence. (Comm'r's Br., pp. 4-7.) In addition, the Commissioner downplays the significance of the ALJ's step two determination, asserting that it is unimportant whether an ALJ classifies particular impairments as severe at step two so long as he finds the totality of impairments to be sufficiently severe to proceed to the latter steps of the sequential process. (Comm'r's Br., p. 4.)

Because the step two determination as to the severity of particular impairments has ramifications for the analyses to be undertaken in the subsequent steps, the Court does not endorse the characterization of step two set forth in the Commissioner's brief. Nevertheless, the question remains whether the ALJ's step two determination as to the non-severity of Plaintiff's right hand difficulty is supported by substantial evidence; if so, the ALJ's decision as to this issue must be affirmed.

A severe impairment is one which significantly limits one's ability to perform "basic work activities." 20 C.F.R. § 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Basic work activities involve "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). Examples include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

Id.

Thus, in order to show a severe impairment, Plaintiff bears the burden of demonstrating that such impairment significantly affects her ability to perform basic work activities. See McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984) (*per curiam*). At the second step of the sequential evaluation process:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

20 C.F.R. § 416.920(c). However, the severity test at step two of the sequential process is designed to screen out only clearly groundless claims. Stratton v. Bowen, 827 F.2d 1447, 1452 (11th Cir. 1987) (citing Baeder v. Heckler, 768 F.2d 547, 551 (3d Cir. 1985) for the

14

proposition that the severity test has been described "as a de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working").

In fact, the Eleventh Circuit describes step two as the "slight abnormality" test. Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987) (*per curiam*) (citing Brady, 724 F.2d 914). Under this test,

> an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

Id. As the Eleventh Circuit has explained, "[s]tep two is a threshold inquiry" and "allows only claims based on the most trivial impairments to be rejected." McDaniel, 800 F.2d at 1031. The claimant's burden is "mild," id., and "the claimant need only show that an abnormality's effect is not so minimal that it would not interfere with [her] ability to work irrespective of age, education, or work experience." Cantrell v. Bowen, 804 F.2d 1571, 1573 (11th Cir. 1986) (*per curiam*).

In his decision, the ALJ discussed the medical evidence concerning Plaintiff's right hand and the severity of her attendant symptoms. In particular, the ALJ discussed and assigned great weight to the opinion of Stanley Wallace, M.D., who evaluated Plaintiff's general physical capacity in a report dated September 10, 2009. R. 19, 29, 409-13. Plaintiff complained to Dr. Wallace of carpal tunnel syndrome in her feet, ankles, knees, wrists, hands, and spine, as well as attendant stiffness, pain, and tenderness. R. 409. Upon examination, Dr. Wallace found no cyanosis or clubbing, no motor loss, and graded muscle

strength of motor groups of 5/5. R. 411. Dr. Wallace further noted that Plaintiff's sensation was normal and that she had full range of motion in all of her joints except for her lumbar spine and left knee. Id. Dr. Wallace also found "mild 4/5 motor loss" of grip and mild loss of dexterity in Plaintiff's right hand, although she could still make a full fist. R. 412. Finally, Dr. Wallace noted that Plaintiff's "[o]verall manual function appears to be preserved although activities such as lifting heavy objects may be impaired with the right hand," and that "[a]ctivities such as buttoning and opening doors are not significantly impaired." Id. Pursuant to an x-ray of Plaintiff's right hand, Dr. Wallace found only "mild joint space narrowing." R. 413.

The ALJ also discussed and assigned great weight to the opinion of Robert Williams, M.D., a state agency physician who examined Plaintiff in a "Physical Residual Functional Capacity Assessment" on July 20, 2010. R. 19, 800-07. In his opinion, Dr. Williams found that Plaintiff was capable of occasionally lifting/carrying fifty pounds and frequently lifting/carrying twenty-five pounds. R. 801. Dr. Williams also checked the boxes indicating that Plaintiff had "limited" handling (gross manipulation) and fingering (fine manipulation). R. 803.

Plaintiff points out that "[t]he State Agency's reviewing doctor found that while [Plaintiff] could do medium duty work, she would also be limited in the use of her hands and fingers for gross and fine manipulation on the right hand." (Pl.'s Br., p. 12.) The argument is apparently based on a Physical Residual Functional Capacity Assessment prepared by John Heard, M.D., another state agency physician, on September 22, 2009. R. 442-49. In Dr. Heard's assessment, he checked boxes indicating that Plaintiff had "limited" handling (gross

manipulation) and fingering (fine manipulation). R. 445. Although Plaintiff seems to refer to that assessment to demonstrate that it established the severity of her difficulties with her right hand and to argue that the ALJ improperly ignored it in his decision, the ALJ very clearly assigned great weight to Dr. Williams' similar assessment, wherein Dr. Williams made identical findings to Dr. Heard's findings concerning Plaintiff's right hand limitations. R. 19, 803. Moreover, the ALJ specifically stated that he concurred with the opinion of Dr. Wallace, which also established minor limitations in Plaintiff's right hand, because it was "supported by and consistent with the medical evidence of Record including the opinion of [Dr. Williams]." R. 29. In short, Plaintiff's argument that Dr. Heard's opinion should have been incorporated into the ALJ's opinion is unconvincing, as the ALJ clearly incorporated and assigned great weight to Dr. Williams' fundamentally identical opinion and the similar opinion of Dr. Wallace.

Moreover, the ALJ discussed at length Plaintiff's activities of daily living, none of which indicated a severe impairment related to her right hand. R. 26. The ALJ noted that Plaintiff's activities of daily living included working part-time for the Salvation Army; taking care of herself; doing laundry; making the bed; cleaning the bathroom and kitchen; shopping for personal items and groceries; caring for a dog; paying bills, counting change, and handling a savings account; and typing emails. R. 26-27. After recounting Plaintiff's extensive activities, the ALJ noted that "[i]n sum, [Plaintiff] is not as limited in her activities as she has alleged."

It is clear from the ALJ's opinion that he methodically addressed Plaintiff's right hand in light of a considerable amount of medical and testimonial evidence, including a

17

number of medical opinions that directly echo the opinion of Dr. Heard, which Plaintiff appears to argue has been improperly omitted. R. 17, 19, 26-27, 29. The Court is mindful that Plaintiff's burden to show the severity of a particular impairment is not a heavy one. See McDaniel, 800 F.2d at 1031. Here, however, the ALJ's determination that Plaintiff failed to meet that burden as to the impairment at issue is supported by substantial evidence. Accordingly, the Court finds that this issue provides no basis for remand or reversal.

### C. The ALJ Properly Used the Grids to Determine Plaintiff is Not Disabled

Plaintiff's final argument is that the ALJ erred in relying exclusively on the Grids rather than consulting a VE to determine if there were other jobs in the national economy that she could perform. (Pl.'s Br., pp. 13-15.) The Commissioner responds that the ALJ properly relied exclusively on the Grids because he found that "Plaintiff's exertional and non-exertional limitations did not preclude her from performing the range of medium work encompassed by the Grids," and because Plaintiff's specified inability to lift "heavy objects" with her right hand would not preclude her from performing the range of medium work either. (Comm'r's Br., pp. 18-19.) The Commissioner has the better argument.

At step four of the sequential evaluation process, the ALJ determined that Plaintiff was unable to perform her past relevant work as a shipping and receiving clerk or a machine operator supervisor. R. 30. However, the ALJ found that Plaintiff had the RFC to perform medium unskilled work. R. 14. As such, the burden shifted to the Commissioner to show the existence of other types of substantial gainful employment that Plaintiff could perform given her age, education, previous work experience, and residual functional capacity. See Phillips v. Barnhart, 357 F.3d 1232, 1239 (11th Cir. 2004). In this regard, the ALJ relied

18

exclusively on the Grids, choosing not to obtain the testimony of a VE.

As the Eleventh Circuit has explained:

> The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform. However, "[e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills." Therefore, we must determine whether *either* of these two conditions exists in this case. If *either* condition exists, the ALJ was required to consult a vocational expert.

Id. at 1242 (internal citations omitted) (emphasis in original). Therefore, the Grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation. Smith v. Bowen, 792 F.2d 1547, 1554 (11th Cir.1986).

The Grids represent unskilled work. See 20 C.F.R. Pt. 404, Sub. P., Appx. 2, § 200.00(b). Furthermore, "[a] limitation to simple tasks require[s] no additional treatment from the ALJ because '[u]nskilled work is work which needs little or no judgment to do simple duties that can be leaned on the job in a short period of time.'" Vuxta v. Comm'r of Soc. Sec., 194 F. App'x 874, 878 (11th Cir. 2006) (*per curiam*); see also Clifton v. Astrue, 298 F. App'x 855, 856 (11th Cir. 2008) (*per curiam*) (finding the ALJ appropriately relied on the medical vocational guidelines where he determined the plaintiff could perform a full range of light work, restricted to unskilled work).

Here, Plaintiff does not appear to directly contest the ALJ's finding that Plaintiff's RFC limited her to medium unskilled work. (See generally Pl.'s Br.) To the extent that she does contest that finding, the Court reiterates that, as explained in detail above, the ALJ properly considered the medical record – including various physical and mental evaluations

and reports, as well as the relevant testimonial evidence – in assessing Plaintiff's RFC, such that any such argument contesting the RFC finding is without merit.

In determining whether there were a significant number of jobs in the national economy which Plaintiff could perform, the ALJ specifically noted his exclusive reliance on the Grids and set forth the proper parameters by which to employ them. R. 30. Citing to Social Security Regulation ("SSR") 83-11, the ALJ noted that, when a claimant "can perform substantially all of the exertional demands of work at a given level of exertion and/or has non-exertional limitations, the [Grids] are used as a framework for decision-making."[3] Id. The ALJ then established that the Grids – specifically, Rule 203.22 – directed a finding of "not disabled" based on Plaintiff's RFC to perform the full range of medium unskilled work. Id. Finally, the ALJ found that Plaintiff's additional exertional and non-exertional limitations "have little or no effect on the occupational base of unskilled medium work," and that a finding of "not disabled" is therefore appropriate. Id.

In light of the ALJ's clear adherence to the relevant authorities governing the use of the Grids, Plaintiff's argument that the ALJ was required to consult a VE in order to determine whether there were sufficient jobs at Plaintiff's RFC is without merit. Plaintiff's argument that the "existence of non-exertional impairments, including the limited use of her right dominant hand and her severe mental impairments" mandated VE testimony or otherwise is likewise unavailing. First, as explained at length above, the ALJ properly found that Plaintiff's right hand limitations did not constitute a severe impairment. Second, the

---

[3]SSR 83-11 establishes that the term "substantially all" is equivalent to "essentially all" and refers to "a full range" of the work existing at the level of exertion in question (sedentary, light, or medium).

Grids take into full consideration the presence of severe impairments, such that the presence of Plaintiff's severe mental impairments not only do not *preclude* a finding that her vocational characteristics coincide with a rule in the Grids, but in fact direct the ALJ to the very section of the Grids that he employed. See 20 C.F.R. Pt. 404, Sub. P., Appx. 2, § 203.00 (listing the individual rules for "[m]aximum sustained work capability limited to medium work as a result of severe medically determinable impairment(s)"). Regardless, as noted above, the ALJ found that the totality of Plaintiff's exertional and non-exertional limitations have little to no effect on the occupational base of unskilled medium work. R. 30. As such, the ALJ did not err by exclusively relying on the Grids, and his opinion is supported by substantial evidence and should not be disturbed.

## IV. CONCLUSION

For the reasons described above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 26th day of July, 2013, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE